# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| ELTON TAYLOR | CIVIL ACTION NO. 03-516 |
| VERSUS | JUDGE S. MAURICE HICKS, JR |
| UNITED PARCEL SERVICE, INC | MAGISTRATE JUDGE PAYNE |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by the Defendant, United Parcel Service, Inc. ("UPS"). [Doc. No. 90]. Plaintiff, Elton Taylor ("Taylor") has sued UPS for alleged race discrimination and retaliation pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. and Louisiana state law. Taylor asserts essentially five claims: (1) "failure to promote" based on discrimination; (2) "failure to promote" based on retaliation; (3) disparate pay based on discrimination; (4) disparate pay based on retaliation; and (5) a hostile work environment.[1] Defendant moves for summary judgment dismissing all of Plaintiff's claims. Plaintiff opposes the motion. For the reasons which follow, the Court finds that there are no genuine issues as to any fact material to Plaintiff's promotion and hostile work environment claims and that UPS is entitled to judgment as a matter of law on those claims. The Court finds that there are genuine issues of fact concerning Plaintiff's pay claims, and therefore denies the motion as to those claims.

---

[1] Although Plaintiff has treated his retaliation claim as a separate claim, such a claim cannot exist in a vacuum. Accordingly, the Court will consider the retaliation claims in conjunction with the adverse employment actions of which Plaintiff complains.

## FACTUAL BACKGROUND

### I.     Plaintiff's Employment at UPS

Taylor has worked for UPS since 1975. During his employment, he has worked in a variety of different positions. In June of 1992, he was promoted to the Center Manager position at the Harvey Center. Subsequent to that promotion, Taylor worked in various "special assignment" positions, such as working with Customer Service for a mobile center and working as a Quality Manager at the Center Manager level. In January of 1999, Taylor was reassigned to a Pre-load Manager position in Shreveport. In early 2000, he also began running Shreveport's On-road Center. It is unclear from the record the current status of Taylor's employment. In any event, he does not assert a termination claim.

### II.    The Division Manager Positions.

Taylor worked for the Gulf South District of UPS. The District is headed by a District Manager. The District Manager has the authority to select any eligible employee within the district to fill an opening or to determine that there is no suitable employee in the district. [Doc. No. 92-3, No. 55]

The Gulf South District conducts Career Development Meetings (or "People's Meetings") twice a year. [Doc. No. 92-3, No. 63] These meetings are attended by the District Manager and his staff, with includes all district personnel at the Division Manager level (Salary Grade 18 or 19). [Id., No. 64] In these meetings, the District Manager and his staff determine eligible candidates to fill any Division Manager level openings which arise before the next meeting (the "Ready Now List"). [Id., No. 65] However, these District Manager positions are not posted and there is no system for applying for such positions. [Id., Nos. 55, 56]

Although Taylor asserts promotion claims all the way back to 1991, as will be shown below, the only relevant time period is from March of 2002 forward. During that time period, Taylor claims he was denied 3 promotions to the position of Division Manager. [Doc. No. 104] The following people were placed in those Division Manager positions:

| | | |
|---|---|---|
| September 1, 2002 | Jerry Kattawar | white male |
| September 1, 2002 | Jeffery Soule | black male |
| August 2, 2003 | Debra Malone | black female |

[Id.; Doc. No. 105]

### III. The Human Resource Division Manager Positions.

In addition to his promotion claims concerning the Division Manager positions, Taylor also seems to be asserting a failure to promote claim concerning all promotions to Human Resource Division Manager nationwide since March 2002. [Doc. No. 104] However, the only specific promotion of which Taylor complains is a District Human Resources position awarded to Cathy Buck-Lehman in January or March of 2003. [Id.] Taylor complains that he cannot provide further information concerning Human Resource promotions because UPS has failed to provide full discovery concerning its Human Resource personnel. [Id.]

### IV. The Morgan Suit.

On June 17, 1994, another suit was filed against UPS claiming racial discrimination in pay and promotional opportunities. See Morgan v. United Parcel Service of America, Docket No. 94-CV-1184, Eastern District of Missouri. The Morgan suit was certified as a class action on October 30, 1996. Although not a named plaintiff, Taylor was a class member in Morgan. He was actively involved in the suit, being named as a witness in 1999 and being deposed in 2000. [Doc. No. 92-3, Nos. 159-161]. All of the class claims were dismissed via summary judgment on June 26, 2000. See Morgan v. United Parcel Service of America, 143 F.Supp.2d

1143 (E.D. Mo. 2000).[2] Some individual claims survived summary judgment, and entry of final judgment on those claims was not made until May 10, 2002. Taylor filed the instant lawsuit on March 19, 2003.

## LAW AND ANALYSIS

**I.    Summary Judgment Standard**.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); see also, Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (*quoting* Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on

---

[2]The Eighth Circuit would later affirm the grant of summary judgment. See Morgan v. UPS, 380 F.3d 459 (8th Cir. 2004).

file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant cannot meet this burden, then "the motion for summary judgment must be granted." Id., Little, 37 F.3d at 1076.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

## II. TOLLING OF THE STATUTE OF LIMITATIONS.

Taylor claims that the statute of limitations on his individual claims was tolled during the pendency of the class action in which he was a class member, Morgan v. United Parcel Service, Docket No. 94-CV-1184, Eastern District of Missouri. The Morgan suit was filed on June 17, 1994 and was certified as a class action on October 30, 1996. All of the class claims were dismissed via summary judgment on June 26, 2000. Some individual claims survived summary judgment, and entry of final judgment was made on May 10, 2002. The instant lawsuit was filed on March 19, 2003. Accordingly, the timeliness of Taylor's individual claims in the instant matter depends in large part upon whether the statute of limitations was tolled until entry of final judgment in the Morgan case (as Taylor contends) or whether it was only tolled until the class claims were dismissed via summary judgment (as UPS contends).

It is well settled that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class, and that it remains tolled for all members of the putative class until class certification is denied. Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 353, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628 (1983)(*quoting* American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action. Crown, Cork & Seal, 462 U.S. at 354, 103 S.Ct. at 2398. The tolling ends when class status is denied; it does not continue during reconsideration or appeal. See Presido Valley Farmers Assoc. v. Marshall, 863 F.2d 384, 391 (5th Cir. 1989); Armstrong v. Martin Marietta Corp., 138 F.3d 1374 (11th Cir. 1998).[3]

---

[3] But see Andrews v. Orr, 851 F.2d 146 (6th Cir. 1988)(statute of limitations ***equitably*** tolled during second motion for certification).

In the event that the putative class is certified, the statute of limitations remains tolled for the class members' individual claims until a final adverse determination of the class claims. Edwards v. Boeing v. Vertol Co., 717 F.2d 761, 766 (3d Cir. 1983)(*vacated on other grounds*, 468 U.S. 1204. 104, S.Ct. 3566, 82 L. Ed. 2d 867 (1984); Brewton v. City of Harvey, 285 F.Supp.2d 1121 (N.D. Ill. 2003). At issue here is whether that "final adverse determination" means when the class claims are dismissed via summary judgment or whether it means when final judgment is entered on the remaining individual claims.

Two other district courts have already considered the precise issue before this Court. Both the Eastern District of North Carolina and the District of South Carolina have held that the tolling ended for the Morgan class plaintiffs when their class claims were dismissed via summary judgment on June 26, 2000. See Womack v. United Parcel Service, Inc., 311 F. Supp.2d 492 (E.D. N.C. 2004); Woodward v. United Parcel Service, Inc., 306 F. Supp.2d 567 (D. S.C. 2004). Those rulings comport with the result when class certification is denied altogether – the tolling ends when class status is denied; it does not continue during reconsideration or appeal.

This Court agrees that the entry of summary judgment, which fully resolved the class claims, was sufficient to put all persons with potential individual claims on notice that they needed to pursue those claims on their own. See Woodward, 306 F.Supp.2d at 573. Although the order of summary judgment was subject to appeal, a reasonable person would not rely on the hope that the court would reconsider and reverse its order. See Womack, 311 F. Supp.2d at 497-498. Accordingly, the Court finds that stopping the tolling upon the dismissal of the class claims is consistent with the policies behind statutes of limitation –

putting defendants on notice of adverse claims and preventing plaintiffs from sleeping on their rights.[4]

For the foregoing reasons, the Court finds that to the extent that the statute of limitations was tolled for Taylor's individual claims during the pendency of the Morgan class action, such tolling ended upon entry of the summary judgment (which dismissed the class claims) on June 26, 2000.

### III.     PLAINTIFF'S PROMOTION CLAIMS.

#### A.     *Relevant Time Periods.*

Taylor brings "failure to promote claims" pursuant to Title VII, Section 1981, and state law. In a deferral state such as Louisiana, a charge of discriminatory conduct must be filed with the EEOC within 300 days after the alleged unlawful act occurs. See 42 U.S.C. §§ 2000e-5(e); EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 111 (1988). Taylor did not file his charge with the EEOC until January 16, 2003. Therefore, the relevant time period for any Title VII claims begins on or about March 20, 2002.

Taylor's failure to promote claims under both 42 U.S.C. § 1981 and state law are subject to a one-year prescriptive period. Taylor v. Bunge Corp., 775 F.2d 617 (5th Cir. 1985); La. C.C. art. 3492. The instant lawsuit was filed on March 19, 2003. Accordingly, the relevant time period for any Section 1981 or state "failure to promote" claims begins on or about March

---

[4]The Court also notes the goal of consistency in fixing the terminal date for tolling of the Morgan class plaintiffs' individual claims.

18, 2002. Accordingly, the time periods under Title VII, Section 1981 and state law are almost identical.[5]

### B. Plaintiff's Discriminatory Promotion Claims.

Claims of intentional discrimination brought under Title VII and Section 1981 require the same proof to establish liability. See Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir.1996); Anderson v. Douglas & Lomason Co., Inc., 26 F.3d 1277, 1284 n. 7 (5th Cir.1994). The Fifth Circuit applies a modified McDonnell Douglas burden-shifting framework to analyze failure to promote claims. A plaintiff must first establish a *prima facie* claim of discrimination. The defendant employer must then articulate a legitimate, non-discriminatory reason for its decision. Once done, "the plaintiff must then offer sufficient evidence to create a genuine issue of material face 'either (1) the defendant's reason is not true, but is instead a pretest for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protect characteristic (mixed-motive analysis).'" Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

A *prima facie* case of discrimination in a failure to promote case consists of four elements: (1) the employee is a member of the protected class; (2) he sought and was qualified for the position; (3) he was rejected for the position; (4) the employer continued to seek applicants with the plaintiff's qualifications. Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir.2000). The *prima facie* case, once established, raises an inference of intentional

---

[5]Patterson v .McLean Credit Union, 491 U.S. 164 (1989), did not affect "failure to promote" claims. Since promotion claims were actionable under Section 1981 prior to the Civil Rights Act of 1991, those claims *(whether based on alleged discrimination or alleged retaliation)* are subject to a one-year prescriptive period.

discrimination and the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Id. If the defendant satisfies this burden, the plaintiff must prove that the proffered reasons are pretextual. Id. Once a Title VII or Section 1981 claim reaches this pretext stage, "the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." Id.

Taylor claims that he has been denied "scores of promotion opportunities which whites have received since and before 1992." [Doc. No. 92-3, No. 86] However, as shown above, Taylor's only timely claims are those which concern promotion since March of 2002. Further, the only claims before this Court are Taylor's individual claims. Accordingly, the relevant inquiry is the reason behind particular employment decisions regarding Taylor. See Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 876, 104 S.Ct. 2794, 2799, 81 L.Ed2d 718 (1984). The focus **is not** on an alleged pattern of discriminatory decisionmaking by UPS, since those pattern-or-practice type claims have already been rejected by the Morgan court. Accordingly, those claims are *res judicata*. Evidence concerning other alleged victims of discrimination is irrelevant to the instant matter, which is limited to particular employment decisions regarding Taylor.

During the relevant time period, Taylor claims he was denied 3 promotions to the position of Division Manager. [Doc. No. 104] The following people were placed in those Division Manager positions:

| Date | Name | Description |
|---|---|---|
| September 1, 2002 | Jerry Kattawar | white female |
| September 1, 2002 | Jeffery Soule | black male |
| August 2, 2003 | Debra Malone | black female |

[Id.; Doc. No. 105; Doc. No. 90, Ex. 1 (Taylor's depo.) at pp. 160-161] Accordingly, Taylor fails to prove even a *prima facie* claim of discrimination concerning 2 of the 3 relevant promotions since they were awarded to black candidates.

UPS contends that it did not select Taylor for a Division Manager position because he was not on the "Ready Now List." [See Doc. 90, Ex. 12]. Taylor's only evidence to dispute this fact for the relevant time period is a "People Profile" from April of 1999 done by Donny Gentry that speculates that he would be "Ready" by 2000. [Doc. No. 103, Ex. 51] However, this 1999 document does nothing to refute the fact that Taylor was not on the "Ready Now List" during the relevant time period beginning in March of 2002.

It is not enough for Taylor to argue that he was a better candidate. Employers have the discretion to choose among qualified candidates, "provided that the decision is not based upon unlawful criteria." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 259, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207. Moreover, "that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability." Id. To the contrary, in order to prove his discrimination claim, Taylor must show that his exclusion from the "Ready Now List" was based on his race. Considering that the list consists of almost equal number of white and black candidates, and considering that 2 of the 3 promotions awarded during the relevant time period went to black candidates, Taylor cannot make such a showing. The fact that the sole white candidate's promotion was confirmed by Taylor's black manager and approved by a black Senior Vice-President further negates an inference of race discrimination. See Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996). Taylor simply cannot show that his failure to be selected for a Division Manager position was based on his race.

Taylor also makes a general claim that he was not promoted into a Human Resources Division Manager position. Any claim that UPS had a pattern or practice of excluding blacks from such positions is barred since the Morgan suit found that no such pattern or practice existed. Accordingly, Taylor is limited to complaining of specific promotions. Here, Taylor admits that he did not tell anyone he was interested in a Human Resources position after he went back to operations, and he only knows of one promotion that was actually awarded. [Doc. 90, Ex. 1 at p. 168] The fact remains that Taylor was not on the "Ready Now List" for promotion. [Doc. No. 90, Ex. 12] That list consisted of both white and black eligible candidates. Accordingly, Taylor cannot show that his failure to be promoted was discriminatory.

The Court finds that Taylor has failed to submit sufficient evidence to create a genuine issue of fact as to whether he was denied any promotional opportunities based on his race. Accordingly, the Court finds that summary judgment is proper as to Taylor's discriminatory promotion claims as a matter of fact and law under both federal and state law.[6]

### D. Plaintiff's Retaliatory Promotion Claims.

To establish a *prima facie* claim of retaliation, Taylor must show (1) that he engaged in protected activity; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. Smith v. AT & T Solutions, Inc., 90 Fed. Appx. 718, 723 (5th Cir. 2004); Fierros v. Tex. Dep't of

---

[6]Any claim brought pursuant to the Louisiana discrimination statutes fails for the same reasons as Plaintiff's federal claims, since the Louisiana statutes are similar in scope to the federal anti-discrimination prohibitions of Title VII. Alphonse v. Omni Hotels Management Corp., 643 So. 2d 836, 838 (La. App. 4 Cir. 1994); see also Sims v. Brown & Root Indus. Services, Inc., 889 F. Supp. 920, 925 n. 3 (W.D. La. 1995), *aff'd,* 78 F.3d 581 (5th Cir. 1996).

Health, 274 F.3d 187 (5th Cir. 2001). It is unclear whether Taylor is also asserting a retaliation claim pursuant to state law. However, Louisiana courts look to federal jurisprudence when construing Louisiana's retaliation statute. Smith v. AT&T Solutions, Inc., 90 Fed. Appx. 718, 723 (5th Cir. 2004).

### 1. Protected activity.

Taylor's contends that he engaged in the following protected activity:

- he questioned why he was not promoted because "they had a lot of black drivers", which he contends caused him to be assigned to the Harvey Center [Doc. No. , No. 158]; this occurred sometime prior to 1992 [Pl. Ex. 1 at p. 77]

- he was actively involved in the Morgan class action, was named as a witness in 1999, and was deposed in 2000 [Doc. No. , Nos. 159-161];

- he reported race discrimination to District HR Manager Berry mills and Rich Bein, District Manager [Id., No. 162]; this occurred in the mid 1980s [Def. Ex. 1 at pp. 29-30]

This is the "protected activity" upon which Taylor bases his retaliation claims.

### 2. Adverse employment actions.

The only timely adverse employment actions about which Taylor complains are the failure to promote claims discussed above.

### 3. Causal connection.

In order to state a *prima facie* claim of retaliation, Taylor must produce evidence of a causal link between his protected activity and an adverse employment action. Here, the temporal proximity between Taylor's protected activity (the most recent of which occurred in 2000) and the September 2002/August 2003 promotions are too far attenuated in time to support a claim for retaliation. See Clark County School District v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508 (2001)(*citing* Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.

1997)(3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992)(4-month period insufficient)).

Further, Taylor has failed to show that the relevant decisionmakers for the promotions had knowledge of his participation in the Morgan suit. Although the plaintiff's burden at the *prima facie* stage is not onerous, he must produce at least some evidence that the decisionmakers had knowledge of his protected activity. Manning v. Chevron Chem. Co. LLC, 332 F.3d 874, 883 n. 6 (5th Cir.2003) (*citing* Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, at 684 (5th Cir. 2001). As the Fifth Circuit held in Manning: "If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." Manning, 238 F.3d at 883, n.6. See also Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 168 (5th Cir.1999)("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."); Reed v. Efficient Networks, Inc., 2004 WL 1717369 (N.D.Tex.)(granting summary judgment on retaliation claim where plaintiff offered no evidence that decisionmaker knew of protected activity). Accordingly, the Court finds that Taylor has failed to state a *prima facie* claim of retaliation.

### 4. *Legitimate, non-retaliatory reason.*

Even if Taylor could prove a *prima facie* claim of retaliation, he has failed to submit any competent summary judgment evidence to show that UPS' legitimate, non-retaliatory reason for not selecting Taylor (he was not on the "Ready Now List" during the relevant time period) is false, or is a pre-text for retaliation. [See Doc. 90, Ex. 12]. Indeed, Taylor has failed to

submit any evidence whatsoever to link his protected activity to his failure to be promoted. Accordingly, the Court finds that Taylor has failed to create a genuine issue of fact concerning his retaliatory promotion claims and that summary judgment is appropriate as a matter of fact and law under both federal and state law.

## IV. PLAINTIFF'S PAY CLAIMS.

### A. *Relevant Time Periods.*

Taylor's disparate pay/retaliatory pay claims are also brought pursuant to Title VII, Section 1981 and state law. As shown above, the relevant time period for any Title VII claims begins on or about March 20, 2002. The relevant time period under state law began on or about March 18, 2002. However, Taylor's pay claims pursuant to 42 U.S.C. § 1981 are subject to a four-year limitations period. See White v. BFI Waste Services, LLC, 375 F.3d 288 (4th cir. 2004); 28 U.S.C. § 1658. The instant lawsuit was filed on March 19, 2003. Accordingly, the relevant time period for any Section 1981 pay claims would have begun on or about March 18, 1999. However, the Morgan class action tolled the statute of limitations between June 17, 1994 and June 26, 2000. The clock was ticking between June 27, 2000 and March 19, 2003, a total of 2 years and 266 days.[7] Since the period was tolled during Morgan, the relevant period reaches back 1 year and 100 days (2000 was a leap year) from the filing of Morgan on June 17, 1994. Accordingly, the relevant period for Taylor's Section 1981 pay claims begins on March 9, 1993.

---

[7]Plaintiff calculates this period to be 965 days, a difference of 31 days from the Court's calculations.

### B. Plaintiff's Prima Facie Claim for Disparate Pay.

To establish a *prima facie* case of discriminatory compensation, Taylor must prove "(1) that he is a member of a protected class and (2) that he was paid less than a nonmember for work requiring substantially the same responsibility." Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir.1984); see also Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. Unit A May 1981). If a plaintiff's job responsibilities are significantly different from the responsibilities of white employees he cites as a point of comparison, then the plaintiff has not made out a *prima facie* case. Williams v. Galveston Independent School Dist., 78 Fed.Appx. 946, 949 (5th Cir. 2003). See Little v. Republic Refining Co., Ltd. 924 F.2d 93, 97 (5th Cir.1991) (holding that plaintiffs must show "nearly identical" circumstances in a claim of disparate treatment). Further, Taylor is limited to his own pay claims and cannot rely on the type of pattern-or-practice evidence which has already been rejected by the Morgan court. See Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 876, 104 S.Ct. 2794, 2799, 81 L.Ed2d 718 (1984).

### C. Conclusion.

Based on the information currently before the Court, the Court finds that there are genuine issues of material fact as to whether Taylor was paid less than similarly-situated white employees or employees who had not engaged in protected activity. Accordingly, the motion for summary judgment is denied as to Plaintiff's discriminatory and retaliatory pay claims. However, the parties are free to re-file a motion for summary judgment concerning those claims after further discovery in light of the Court's instant ruling.

## V. HOSTILE WORK ENVIRONMENT CLAIM.

Taylor also alleges a claim for a hostile work environment pursuant to Title VII, Section 1981 and state law. To establish a claim under any of these statutes, Taylor must show that:

> 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). Furthermore, Taylor must show that the conduct was severe or pervasive. The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

In order to meet his burden, Taylor must show more than a few isolated incidents of racial harassment. See Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir.1986). Instead, there must be a steady barrage of discriminatory comments. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). A hostile work environment can only be found when the workplace is "permeated" by the offensive conduct. Id. Taylor's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir. 1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir. 1991).

Here, Taylor has offered no evidence of any racially offensive comments or other race-based conduct which could be construed as physically threatening or humiliating. He certainly

has not shown that the workplace was permeated by such conduct. Accordingly, he has failed to state a claim for race-based "harassment." Accordingly, the Court finds that summary judgment is proper as to Taylor's hostile environment claims as a matter of fact and law under both federal and state law.

## CONCLUSION

For the foregoing reasons, the Court finds that summary judgment is proper as a matter of fact and law as to Taylor's "failure to promote" and hostile work environment claims. The Court finds that genuine issues of fact remain concerning Plaintiff's pay claims. However, the parties are free to re-file a motion for summary judgment on those claims after further discovery.

Therefore:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Defendant [Doc. No. 90] be **DENIED** as to Plaintiff's discriminatory and retaliatory pay claims.

**IT IS FURTHER ORDERED** that in all other respects, Defendant's motion be **GRANTED.**

**IT IS FURTHER ORDERED** that this matter be referred to the Magistrate Judge for the issuance of a new scheduling order.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 15th day of March, 2006.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE